Ruffin, C. J.
 

 We think no serious doubt can be raised of the plaintiff’s right to recover. Although the Legislature does not allow the County Court to build a
 
 toll bridge,
 
 nor to authorize a private person to build one and collect thereat unequal tolls from different, persons ; but, for obvious reasons, requiring the court to
 
 lay
 
 uniform tolls: yet it is clear, that the builder of the bridge is not obliged to
 
 collect
 
 the same toll from every person. None of the reasons for laying such a toll apply to its collection. It is granted to the builder as his compensation. It is for his benefit and is his property; and, consequently, he may levy what he likes from each person, within the rates fixed by the court, or relinquish it altogether. As applied to a bridge, remaining private property, these positions were not disputed at the
 
 *405
 
 bar. But it was said, that, upon a purchase by the County Court, the bridge becomes free for all persons, as there is no difference between building a bridge and buying one already built; and it was pressed upon the court, that there would be danger of evading the act of 1784, (Rev. Stat. ch. 104, sec. 26,) if the court might grant the franchise to an individual, and then buy him out, with a view to the tolls as a revenue to the county, raised at the expense of passengers from other counties. But there is no color for the imputation of collusion in this case ; for the bridge was held as private property for upwards of forty years, and was then purchased by the county under the sanction of the Legislature. In the next place, it may be admitted, that, under the act of 1784, upon a purchase by the public, the bridge is made public and free, yet in this case the parties did not trust to that act, but procured *‘a special one to be passed to obviate that provision of the general law. The private act of 1838, ch. 11, confers on a majority of the justices of the County Court of Perquimons, power to purchase this bridge “ for the benefit of the county,” and to receive a conveyance for and “ hold it as trustees for the county, and to exact or remit the usual lawful toll for passing thereof, as to them may seem most conducive to the benefit of the people of said county,” and then the justices are required to keep the bridge in repair, and, in default thereof, are made liable, as other owners of toll bridges, to be sued for damages sustained by any person. It is evident that the object of this act was to enable the justices to purchase and hold this, as a toll bridge. Without any act they could, by a mere purchase, have opened the bridge freely to the public; and it was the purpose of the Legislature to prevent the purchase from having that effect, and to vest the bridge in the justices as legal owners, without therein changing it from a toll to a free bridge. By virtue of their ownership, the justices, without restraining words in the act, could, of course, collect or not collect the tolls from any individuals or classes in their pleasure. There is no such restriction upon their
 
 *406
 
 rights as general owners; but, on the contrary, the Ianguage5 when applied to one who is the owner of the bridge, imports the utmost latitude of discretion and power to “ exact or remjt tke t0nf” 'Whether, therefore, we advert to the rights of ownership, or to the authority conferred on the justices by the act of 1838, to collect or remit tolls, we conclude that they could lease to the plaintiff upon an agreement, that he should not demand toll from certain persons, and might from all others.
 

 Per Curiam. Judgment affirmed.